## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SAKAIYAH WHETSTONE**, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>**THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, d/b/a PENN MEDICINE**<br><br>      Defendant. | Case No.: 2:26-cv-04060<br><br>Hon.: |

### COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Sakaiyah Whetstone ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant The Trustees of The University of Pennsylvania d/b/a Penn Medicine, and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq* and common law.

1

2.      Defendant is a regional healthcare system that holds itself out as "one of the world's leading academic medical centers" which "melds innovation with compassionate care by offering patients access to the latest medical breakthroughs."[1]

3.      To "deliver the best care to all patients," Defendant says that its "Customer Service and Patient Access team members are critical."[2]

4.      In providing the aforementioned services, Defendant employs individuals in patient and customer support positions in on-site and remote settings. Defendant used a number of job titles, including, but not limited to, Access Associate and Patient Services Associate to refer to these employees (collectively referred to herein as "Patient Access Representatives" or "PARs"). Defendant heavily relied on PARs to, among other things, schedule patient appointments, send messages to medical staff, refill prescriptions, and connect patients with medical offices.

5.      Defendant classified its PARs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

6.      Defendant employed Plaintiff as a PAR.

7.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's PARs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

8.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

---

[1] *See* https://www.pennmedicine.org/about (last visited May 28, 2026).
[2] *See* https://careers.pennmedicine.org/search/customer-service-patient-access/jobs (last visited May 28, 2026).
[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA) (July 2008), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

9.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

10.     Defendant violated the FLSA and common law by systematically failing to compensate its PARs for work tasks completed before their scheduled shifts and during their unpaid meal periods when they were not logged into Defendant's timekeeping system, which resulted in PARs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime and in non-overtime workweeks, for regular hours.

11.     More specifically, Defendant failed to compensate PARs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendant's timekeeping system.

12.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29

U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

15.    Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.    Plaintiff's state-law claims originate from the same facts that form the basis of her federal claims. Thus, the Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

17.    The Court has personal jurisdiction over Defendant because Defendant conducts business within this District, employs individuals within this District, and maintains its principal place of business in this District at 3451 Walnut Street, Room 310, Philadelphia, Pennsylvania 19104.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant's principal place of business is in this District and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## **PARTIES**

19.    Plaintiff is a resident of Philadelphia, Pennsylvania, and worked remotely for Defendant as an hourly, non-exempt PAR with the specific job title of Access Associate from approximately February 2025 through July 2025. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $20.52 per hour. Plaintiff's consent to join this collective action is attached hereto as **Exhibit A**.

20.    Additional, putative collective members were or are employed by Defendant as

4

PARs during the past three years and their consent forms will also be filed in this case.

21.    Defendant The Trustees of the University of Pennsylvania d/b/a Penn Medicine is a Pennsylvania domestic nonprofit corporation registered with the Commonwealth of Pennsylvania. Defendant maintains a registered office for service of process at 3451 Walnut Street, Room 310, Philadelphia, Pennsylvania 19104.

## GENERAL ALLEGATIONS

22.    Defendant paid its PARs at varying hourly rates.

23.    Defendant's PARs typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

24.    While Defendant has access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

25.    Prior to hiring, Defendant provided prospective PARs with a written offer setting forth the PAR's terms of employment, the offered rate of pay, work schedule and other information.

26.    Defendant maintains documents demonstrating the promised hourly wage for each PAR, including, but not limited to: offer letters, paystubs, and/or other payroll records.

27.    Plaintiff received such an offer from Defendant to work as a PAR and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

28.    In consideration for Plaintiff's work as a PAR, Defendant promised to pay Plaintiff her hourly wage for each hour she worked for Defendant, as well as any overtime hours worked.

29.    Plaintiff performed and fulfilled her duties under her contract with Defendant by

carrying out her job responsibilities, which included, but were not limited to, verifying patient appointments, verifying insurance, and assisting with patient claims. The aforementioned customer service was provided via inbound and outbound calls and Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

30.     Defendant provided training to PARs on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that all of Defendant's PARs received was substantially, if not entirely, the same.

31.     At all relevant times, Defendant controlled Plaintiff and all other PARs' work schedules, duties, protocols, applications, assignments, and employment conditions.

32.     Defendant required Plaintiff and all other PARs to use a computer and a variety of essential and indispensable computer programs and applications in order to perform their job duties.

33.     Plaintiff and other similarly situated PARs were instructed to be ready to answer calls, or "call ready," the moment their scheduled shift started, yet Defendant prohibited them from clocking in before the start of their shift. This required Defendant's PARs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shifts began. During the boot-up and login process, Defendant's PARs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

34.     Additionally, Defendant maintained schedule adherence and attendance metrics

pursuant to which they monitored the PARs' clock in times in relation to their start of shift time, as well as the time the PARs went into a "ready" status. Defendant enforced these policies and procedures by routinely evaluating PARs and, at times, disciplining them. This discipline included, but was not limited to, verbal warnings, write-ups, and termination.

35.     All of Defendant's PARs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the PARs' work and they could not perform their jobs without them.

36.     Defendant's PARs also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

37.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its PARs in order to pressure them into performing pre- and mid-shift work off-the-clock.

38.     The pre- and mid-shift off-the-clock time Plaintiff and all other PARs spent booting-up/logging into their computers and applications and programs directly benefited Defendant and was integral and indispensable to the PARs' job responsibilities.

39.     As a result of the pre- and mid-shift off-the-clock work described herein, Plaintiff and other PARs were unlawfully deprived of approximately ten (10) to twenty (20) minutes of compensation every day.

40.     At all relevant times, Defendant was able to track the amount of time Plaintiff and similarly situated PARs spent in connection with the pre- and mid-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other PARs for the off-the-clock work they performed, thus breaching their contracts with their PARs.

7

41.    Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

42.    Despite knowing Plaintiff and all other PARs performed this pre- and mid-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

43.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other PARs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

44.    Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other PARs experienced technical issues.

45.    Because Defendant required its PARs, including Plaintiff, to perform pre- and mid-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time PARs spent working for Defendant. Thus, the hours reflected on the PARs' paystubs are also inaccurate representations of the hours they worked.

A. **Pre-Shift Off-the-Clock Work**

46.    The off-the-clock pre-shift process took substantial time on a daily basis, approximately five (5) to fifteen (15) minutes per shift.

47.    Upon arriving to their computers, Defendant's PARs were trained and required to follow a specific protocol to start up and log into Defendant's network and numerous software programs to access the necessary information to perform their job duties.

48.    Before each shift, PARs were required to undertake essential work tasks, which generally consisted of the following steps: turn on or wake up their computer; log into Microsoft

Windows with a username and password; connect to Defendant's virtual private network ("VPN") with a two-factor authentication; and open various programs and applications that were integral and indispensable to their job duties as PARs, including but not limited to, Epic, Salesforce, Availity, and NaviNet.

49.    Only once all applications were open and loaded, could Plaintiff and the Representatives clock in.

50.    Defendant's PARs had to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the PARs had to arrive to work approximately five (5) to fifteen (15) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

51.    Defendant's PARs were not compensated for this time because Defendant prohibited PARs from clocking into their timekeeping software before the start of their scheduled shift.

52.    The pre-shift, off-the-clock work PARs performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as PARs.

B.  **Meal-Period Off-the Clock Work**

53.    Plaintiff and similarly situated PAR were typically scheduled one unpaid 30-minute meal period each eight (8) hour shift.

54.    At all relevant times, Plaintiff and Defendant's PARs regularly performed at least five (5) minutes of compensable work for Defendant during their uncompensated "meal breaks."

55.    More specifically, Defendant required Plaintiff and similarly situated PARs to return to their computer stations prior to the end of their unpaid meal periods to log back in and

9

place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

56.     If PARs were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal breaks, they were considered out of adherence and could be subjected to disciplinary action.

57.     The off-the-clock work Plaintiff and other PARs performed during their meal periods was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as PARs.

58.     Defendant did not prohibit Plaintiff and similarly situated PARs from working during their "meal breaks." Instead, Defendant routinely suffered or permitted them to perform such work and routinely failed to ensure that work was not being performed during their "meal breaks."

59.     Defendant knew or should have known that Plaintiff and its PARs performed work during their unpaid "meal breaks" because, *inter alia*, Plaintiff and the PARs performed such work for Defendant at management's request and were rewarded for it through Defendant's schedule adherence metrics.

60.     Despite knowing that Plaintiff and similarly situated PARs worked during their "meal breaks," and receiving, accepting, and enjoying the benefits from such work, Defendant failed to compensate them for it.

**C.  The Off-the-Clock Work Results in Viable "Gap Time" Claims**

61.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over

10

40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

62.     Plaintiff, and similarly situated PARs, regularly worked non-overtime hours (i.e. "gap time") for which she was not paid.

63.     During the weeks that PARs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its PARs.

## FLSA COLLECTIVE ACTION ALLEGATIONS

64.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former non-exempt employees employed by Defendant in patient access, customer service, registration, scheduling, call center, front desk, or substantially similar patient-support positions who work or have worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

65.      Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

66.      Consistent with Defendant's policies and practices, Plaintiff and the FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

67.      All of the work Plaintiff and the FLSA Collective performed was assigned by

11

Defendant, and/or Defendant was aware of all of the work the Plaintiff and the FLSA Collective performed.

68. Defendant was aware, or should have been aware, that federal law required them to pay Plaintiff and the FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

69. As part of their regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

70. Defendant's unlawful conduct has been widespread, repeated, and consistent.

71. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

72. The employment relationships between Defendant and every FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every FLSA Collective member, to wit: whether the FLSA Collective members were (1) required to work uncompensated boot-up and login time and (2) entitled to overtime gap time in

12

overtime workweeks.

73.    Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands, of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

74.    Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

75.    These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 2119(c); 29 C.F.R. § 516 *et seq*.

76.    The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216. Unless, the Court promptly issues such notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## RULE 23 PENNSYLVANIA STATE LAW CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> *All current and former **non-exempt employees employed by Defendant in patient access, customer service, registration, scheduling, call center, front desk, or substantially similar patient-support positions** who work or have worked for Defendant in Pennsylvania at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Pennsylvania Class"). Plaintiff reserves the right to amend this definition if necessary.

78.    *Numerosity*: The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action

13

will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Pennsylvania Class members, each of whom should be easy to identify from Defendant's computer systems and personnel and payroll records.

79.     *Commonality/Predominance*: There is a well-defined community of interest among the Rule 23 Pennsylvania Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

  a. Whether Defendant maintained a common policy or practice requiring PARs to perform off-the-clock work before and/or during their scheduled shifts;

  b. Whether Defendant violated Pennsylvania state law by failing to pay PARs for all hours worked;

  c. Whether Defendant violated Pennsylvania state law by failing to make, keep, and preserve true and accurate payroll records; and

  d. The proper measure of damages sustained by the Rule 23 Pennsylvania Class.

80.     *Typicality*: Plaintiff's claims are typical of those of the Rule 23 Pennsylvania Class members in that Plaintiff and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Rule 23 Pennsylvania Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Pennsylvania Class members.

81.     *Adequacy*: Plaintiff will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Pennsylvania Class.

82.     *Superiority*: A class action is superior to other available methods for the fair and

14

efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Pennsylvania Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 Pennsylvania Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

83.    The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant maintains a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

84.    Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

85.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

86.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former non-exempt employees employed by Defendant in patient access, customer service, registration, scheduling, call center, front desk, or substantially similar patient-support positions who work or have worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

87.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

88.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

   a.   Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

   b.   Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

   c.   Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

89.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they

16

and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

90.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

91.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

92.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

93.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove*, 559 U.S. at 398 ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

94.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also

appropriate.

<b><u>COUNT I</u></b><br>
<b><u>VIOLATION OF THE FAIR LABOR STANDARDS ACT,</u></b><br>
<b><u>29 U.S.C. § 201, <i>et seq.</i> -- FAILURE TO PAY OVERTIME</u></b>

95.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

96.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq.*

97.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

98.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

99.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

100.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were are all non-exempt employees.

101.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

102.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

103.    The FLSA requires all employers to keep accurate payroll records and time records

18

for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.1, *et seq*.

104.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed.

105.    The off-the-clock work Plaintiff and the FLSA Collective performed every shift was an essential part of their job duties and the activities and the time associated with the activities was significant.

106.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

107.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

108.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective members for all work activities, but did not.

109.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal

19

amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 PENNSYLVANIA CLASS ACTION**
**VIOLATIONS OF THE PENNSLYVANIA MINIMUM WAGE ACT, 43 P.S. §§ 333.101,**
***et seq.*** **AND PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. §§**
**260.1, *et seq.* ("PENNSYLVANIA WAGE ACTS")**

110. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

111. At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Pennsylvania Wage Acts, and Plaintiff and the Rule 23 Pennsylvania Class were employees entitled to the Pennsylvania Wage Acts' protections. *See* 43 P.S. § 333.103(f)-(g); 43 P.S. § 260.2a.

112. The Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* entitles employees to compensation for every hour worked in a workweek*,* 43 P.S. § 333.103, and time-and-a-half their regular rate of pay of hours worked in excess of 40 per week. 43 P.S. § 333.104(c).

113. The Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq.* requires that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer." 43 P.S. § 260.3(a).

114. As discussed herein, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Pennsylvania Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff and the Rule 23 Pennsylvania Class members

20

performed on Defendant's behalf.

115. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, including the unpaid pre-shift and meal-period work activities described herein, but Defendant failed to perform by paying Plaintiff and the Rule 23 Pennsylvania Class the promised wages for all work.

116. Upon information and belief, each Rule 23 Pennsylvania Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period, in addition to applicable overtime premiums.

117. Plaintiff and every other Rule 23 Pennsylvania Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift and meal-period work described herein.

118. Defendant breached its contractual promises by failing to pay Plaintiff and the Rule 23 Pennsylvania Class for all wages (regular and overtime) owed.

119. 43 P.S. § 333.113 provides that an employee who is not paid in accordance with the PMWA may bring a civil action to recover all unpaid amounts, plus costs and reasonable attorneys' fees. *See* 43 P.S. § 333.113.

120. Under 43 P.S. §§ 260.9a, 260.10, an employee aggrieved by an employer's violation of the PWPCL may bring a civil action to recover all unpaid amounts, plus liquidated damages equal to twenty-five (25%) of the total amount of wages due, or five hundred dollars

21

($500), whichever is greater, costs and reasonable attorneys' fees. *See* 43 P.S. § 260.9a(b), (f); *see also* 43 P.S. § 260.10.

121.    Defendant violated the Pennsylvania Wage Acts by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Pennsylvania Class for the time spent on the work activities described in this Complaint.

122.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

123.    As a result, Plaintiff and the Rule 23 Pennsylvania Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Pennsylvania Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Pennsylvania Wage Acts at an amount to be proven at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

124.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

125.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

126.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for PAR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23

Nationwide Class the promised wages.

127.    Defendant breached its contractual promises by failing to pay PARs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

128.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate that varied within the applicable period.

129.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and mid-shift work described herein.

130.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

131.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

132.    Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time"

23

claims for non-overtime hours/workweeks).

133.    Defendant also breached its duties of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

134.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT IV
## RULE 23 NATIONWIDE CLASS ACTION
## NATIONWIDE UNJUST ENRICHMENT

135.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

136.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

137.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

138.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

139.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

140.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work

24

tasks at the request of and without objection by Defendant.

141. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

142. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

143. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures.

144. Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

145. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

146. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including, but not limited to, loss of wages.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

    a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b. An Order certifying this action as a class action (for the Rule 23 Pennsylvania Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Count II);

c.   An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.   An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and phone numbers of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e.   An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

f.   An Order declaring Defendant violated the FLSA;

g.   An Order declaring Defendant's violations of the FLSA were willful;

h.   An Order declaring that Defendant violated Pennsylvania state law and its attendant regulations as set forth above;

i.   An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre- and mid-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

j.   An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 Pennsylvania Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.   An Order compelling a complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

l.   An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

m.   An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.   An Order awarding such other and further relief as this Court deems appropriate.

26

## <u>JURY DEMAND</u>

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: June 12, 2026

Respectfully Submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch (PA 56887)
LYNCH CARPENTER LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
(412) 322-9243
gary@lcllp.com

Ethan C. Goemann (GA Bar No. 326816)
(*Pro Hac Vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
egoemann@sommerspc.com

*Counsel for Plaintiff, the FLSA Collective
and the Putative Class*

27